IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RICHARD TERRY and CANDISE TERRY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:16-cv-0011 |
| FORTRESS INVESTMENT GROUP, LLC; HARVEST FACILITY HOLDINGS, LP; HARVEST MANAGEMENT SUB TRS CORPORATION; HARVEST MANAGEMENT SUB LLC d/b/a HOLIDAY RETIREMENT; and HARVEST WHITEROCK COURT RETIREMENT RESIDENCE, LLC | § § § § § § § § § § § § | Jury Demanded |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Richard Terry and Candise Terry bring this Fair Labor Standards Act ("FLSA") suit against the above-named Defendants ("Defendants" or "Holiday") and shows as follows:

**I.    NATURE OF SUIT**

1.    The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less that one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

2. Defendants violated the FLSA by misclassifying Plaintiffs as exempt from the FLSA's overtime requirements. Plaintiffs regularly worked in excess of 40 hours per week and did not get paid overtime pay for overtime work, whether they were working as Community Managers, Community Co-Managers, or Floating Managers.

## II.   PARTIES

3. Plaintiffs Richard Terry and Candise Terry are individuals who reside in Grayson County, Texas and were employed by Defendants within the meaning of the FLSA. They hereby consent to be a party in this action and their consent forms are attached as Exhibit A and B.

4. Fortress Investment Group, LLC ("Fortress") is a limited liability company headquartered in New York, New York and organized under the laws of Delaware. Fortress does business and is engaged in commerce in the State of Texas and nationwide, both in its own capacity and through its wholly-owned subsidiaries. Fortress maintains an office in Irving, Texas.

5. Harvest Facility Holdings, LP is a limited partnership headquartered in Lake Oswego, Oregon and organized under the laws of Delaware. Harvest Facility Holdings, LP does business and is engaged in commerce in the State of Texas and nationwide, both in its own capacity and through its wholly-owned subsidiaries. Harvest Facility Holdings, LP, is majority-owned by Fortress.

6. Harvest Management Sub TRS Corporation is a Delaware corporation headquartered in Salem, Oregon. Harvest Management Sub TRS Corporation does business and is engaged in commerce in the State of Texas and nationwide, both in its own capacity and through its wholly-owned subsidiaries. Harvest Management Sub TRS Corporation is a wholly-owned subsidiary of Harvest Facility Holdings, LP.

7. Harvest Management Sub, LLC, is a limited liability company headquartered in Salem Oregon and organized under the laws of Delaware. Harvest Management Sub, LLC does

business and is engaged in commerce, in the State of Texas and nationwide, under its own name and under the name of "Holiday Retirement."  Harvest Management Sub, LLC is a wholly-owned subsidiary of Harvest Facility Holdings, LP.

8. Harvest Whiterock Court Retirement Residence, LLC is a limited liability company headquartered in Salem Oregon and organized under the laws of Delaware.  Harvest Whiterock Court Retirement Residence, LLC does business and is engaged in commerce, in the State of Texas.  Harvest Whiterock Court Retirement Residence, LLC is a wholly-owned subsidiary of Harvest Facility Holdings, LP.

### III.   JURISDICTION AND VENUE

9. This Court has jurisdiction over the claim because Plaintiffs have asserted a claim arising under federal law.

10. Venue is proper in the Eastern District of Texas because the events forming the basis of the suit occurred in this District and Plaintiffs reside there.

### IV.   COVERAGE FACTS

11. At all material times, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs.

12. At all times hereinafter mentioned, Defendants have been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

14. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprises have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

15. At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

## V.   FURTHER FACTUAL ALLEGATIONS

16. Holiday does business as Holiday Retirement in 42 states throughout the United States. It owns over 300 retirement communities, which are marketed to seniors as a "safe carefree all-inclusive independent retirement lifestyle."

17. One of the major selling points of Holiday's retirement facilities is that there are always on-site managers who are available around-the-clock to assist the residents in any way. These managers are usually mature or senior couples. Holiday Retirement advertises, markets, and promotes their retirement communities with the specific promise that a management team will always be available to assist the residents 24 hours a day. This factor is emphasized in Holiday's marketing and is a point which has made Holiday Retirement a leading retirement community corporation throughout the United States.

18. Holiday profits from the fact that senior residents seek a secure retirement community with assistance available at all times. Residents at Holiday's communities pay a premium monthly fee for the safety and peace of mind that comes with knowing a management team is always available to help them.

19. Plaintiffs were employed as either Community Managers or Co-Managers from three years prior to the filing of the Complaint until approximately May 31, 2012.  During the period

of time in which they were employed by Defendant as Community Manager/Co-Manager, Plaintiffs' primary duty was the performance of non-exempt work, including opening the community to other employees each morning, inspecting the facility, making and serving coffee to the residents two to three times per day, event set-up and take-down, assisting wait staff in serving meals to the residents, plunging toilets, assisting residents with issues relating to air conditioning, television operations, trash collection, communications to the families of residents, communicating rent increases set by upper management, fixing clogged toilets and drains, cleaning up after residents, and setting up activities for residents.

20. During the relevant time period, Plaintiffs routinely and regularly worked in excess of 40 hours each week, usually working in excess of 80 hours per week without receiving overtime compensation for all overtime hours worked while performing the duties of a Community Manager/Co-Manager.

21. During a portion of their 80-plus hour workweek, Plaintiffs were required to be on call approximately at least 36 hours per week. During the periods they were on-call, Plaintiffs were required to remain on the Defendants' premises, and were unable to use their time effectively for their own purposes. In addition, on many occasions, Plaintiffs were required to perform tasks during their on-call periods.

22. Defendants' management was aware that Plaintiffs were working significant overtime hours with no additional compensation paid to Plaintiffs.

23. Aside from permanent Community Managers/Co-Managers, Holiday also hires Regional Support Managers, also known as Floating Managers (or simply as "Floaters"). The Floating Managers are available to work at various facilities in their area (or other areas) when there is a temporary need for a fill-in management team.  Plaintiffs worked as salaried Floating Managers

for Holiday. Plaintiffs worked as salaried Floating Managers from approximately June 1, 2012 until approximately August 15, 2014.

24. Unlike the normal management teams, the Floating Managers are not Community Managers of the Holiday facilities. They live apart from the facilities they support and only stay at the facilities for as long as their specific assignment requires. These temporary assignments can vary in length from a couple of days to months at a time, depending upon the facility's specific need.

25. Plaintiffs were assigned to either the manager's shift or the co-manager's shift when they are assigned to a community. These shifts require that they work between 8 to 12 hours a day, and then remain on the premises for a 12 hour on-call overnight shift which typically runs from 7:00 pm to 7:00 am. This on-call overnight shift is always immediately after a full 8 or 12-hour day.

26. Plaintiffs were required to work these on-call overnight shifts several times in any given week when they were working at a Holiday facility.

27. While working these overnight shifts, Plaintiffs could not leave the community. They were provided with a room away from the Manager's office where they could stay during the night. They were required to stay in the community in close proximity to the Manager's office and to the emergency call system located therein. They were required to be available at all times to immediately respond to any problems, inquiries, or requests for assistance from or regarding the residents.

28. As Floating Managers, Plaintiffs were also responsible for the safety of the community during the night, including locking up and closing the entrance and supervising that no unauthorized persons gained access to the community during the hours when the entrance is closed. They were further responsible for overseeing that the lighting in the common areas

functioned properly at night and the common areas were safe and secured and free of fire hazards.

29. Because of these responsibilities and the need to be available to respond to inquiries from the residents or others at any time, Plaintiffs were restricted in their activities during the overnight shift. They did not have the option, for example, to stay overnight at their home if it is nearby, or to stay at a nearby hotel. They were required to stay in the community away from the Manager's office in order to respond to calls and emergencies. They could not indulge in any drinking of alcohol or take any sleep medication or other drugs which would impair their ability to assist the residents at any time during the on-call shift.

30. Holiday did not compensate Plaintiffs for the overnight on-call shift while working as Floating Managers.

31. Further, Holiday did not accurately pay for the actual time Plaintiffs spent in physically carrying out the tasks in connection with an emergency call or any other call or inquiry during the overnight on-call shift.

32. Holiday did not pay overtime to Plaintiffs when they worked overtime hours (in excess of 40 per week) while working as Floating Managers.

33. Holiday's failure to pay overtime pay to Plaintiffs during their entire employment with Defendants results from a willful failure to pay for all time worked, including overtime, and willfully failure to keep accurate time records.  Holiday thereby enjoyed ill-gained profits at the expense of Plaintiffs.

34. Holiday and all of its subsidiaries and affiliates are joint employers under the meaning of the FLSA because (1) the operations of Holiday and its subsidiaries are interrelated; and (2) the companies share common management, including common human resources and compliance.

## VI.     CAUSE OF ACTION: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

35.     During the relevant period, Defendants have violated and is violating the provisions of Sections 6 and 7 of the FLSA, 29 U.S.C. §§ 206-7, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.  Defendants have acted willfully in failing to pay Plaintiffs in accordance with the law.

## VII.     RELIEF SOUGHT

36.     WHEREFORE, cause having been shown, Plaintiffs pray for judgment against Defendants as follows:

    a.     For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs; and

    b.     For an Order awarding Plaintiffs the costs of this action;

    c.     For an Order awarding Plaintiffs' attorneys fees; and

    d.     For an Order awarding Plaintiffs pre-judgment and post-judgment interest at the highest rates allowed by law; and

    e.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

/s/ *J. Derek Braziel*
**J. DEREK BRAZIEL**
*Attorney in Charge*
Texas Bar No. 00793380
**J. Forester**
State Bar No. 24087532
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas  75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

**ATTORNEYS FOR PLAINTIFFS**